UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TRIPLE A INTERNATIONAL, INC., a
Michigan corporation,

    Plaintiff,

v.

THE DEMOCRATIC REPUBLIC OF
THE CONGO, a foreign state,

    Defendant.

Case No.

Honorable

Magistrate Judge

## COMPLAINT

Plaintiff Triple A International, Inc., by and through its attorneys, Kerr, Russell and Weber, PLC and Ali Dagher, Esquire, for its Complaint against Defendant the Democratic Republic of the Congo, states as follows:

### PARTIES, JURISDICTION & VENUE

1. Plaintiff Triple A International, Inc. ("Triple A") is a corporation incorporated under the laws of Michigan, and has its principal place of business in Michigan.

2. The Democratic Republic of the Congo (the "DROC") is a foreign state defined by 28 U.S.C. § 1603(a).

3. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1605(a) because this action involves a foreign state's "commercial activity carried on in the United States by the foreign state" and/or "act[s] outside the territory of the United States in connection with the commercial activity of the foreign state elsewhere and that act cause[d] a direct effect in the United States."

{35320/1/DT548624.DOC;2}

4. This Court has personal jurisdiction over the DROC under 28 U.S.C. § 1330(a) because it is a "foreign state as defined in section 1603(a)" and involves claims "for relief in personam with respect to which the foreign state is not entitled to immunity either under sections 1605-07 of [Title 28] or under any applicable international agreement."

5. Venue is appropriate in the United States District Court for the Eastern District of Michigan under 28 U.S.C. § 1391(f)(1) because "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated" [in this judicial district.]

## GENERAL ALLEGATIONS

6. Triple A is in the business of conducting and facilitating international business transactions throughout the world.

7. Triple A was founded by Mr. Ali Sulaiman during late 1991, and incorporated under Michigan law. Since that time, Triple A has maintained its primary offices in the City of Dearborn, Michigan. At various times, Triple A has maintained satellite offices in Sierra Leone and the DROC.

8. During the early 1990s, Triple A became involved in several private business transactions in Zaire (now the DROC).

9. During late 1993, officials from the Government of Zaire solicited Triple A to procure certain light equipment for its military. This equipment included uniforms, berets, sleeping bags, boots, and the like.

10. From Triple A's offices in Michigan, a representative located a manufacturer in South Korea to fulfill the order. The representative then travelled from Michigan to Zaire to meet with government officials before travelling onwards to South Korea.

11. In South Korea, the representative met with representatives from the Dae Myung Trading Company to price out and to assemble the order.

12. On January 5, 1994, Triple A sent samples and a proposal for the equipment to Secretary General for National Defense of Zaire. (Exhibit A, Proposal).

13. On January 13, 1994, the Vice Prime Minister of National Defense approved the purchase of the equipment specified in the proposal for a total of $14,070,000.00 USD (Exhibit B, 1/13/94 Correspondence).

14. Triple A subsequently arranged for the delivery of the military equipment to the Ministry of Defense. Upon delivery, the Ministry of Defense accepted the equipment.

15. On October 29, 1994, the Vice Prime Minister of National Defense instructed the Ministry of the Budget to remit payment to Triple A for the goods. (Exhibit C, 10/29/94 Correspondence).

16. Triple A instructed Zaire to remit payments to Triple A's bank account.

17. The DROC subsequently failed to pay Triple A for the equipment.

18. On February 18, 1997, the Vice Prime Minister of the National Defense sent correspondence to the Minister of Finance directing the latter to pay Triple A. (Exhibit D, 2/18/97 Correspondence). Despite this directive, the DROC again failed to pay Triple A.

19. On January 15, 2004, the Director General of the Public Debt of the DROC issued a certificate to Triple A acknowledging its indebtedness to Triple A. (Exhibit E, Certificate).

20. On September 28, 2007, the Minister of the National Defense instructed the Ministry of the Budget to pay Triple A for the equipment. (Exhibit F, 9/28/07 Correspondence). Nevertheless, the DROC did not pay Triple A.

21. On April 29, 2009, representatives from the Ministry of the Budget and Triple A reaffirmed the indebtedness to Triple A and negotiated a resolution to their dispute. Triple A forgave interest it may be owed for the failure to make earlier payment. (Exhibit G, 4/29/09 Minutes).

22. Thereafter the Ministry of the Budget of the DROC affirmed that it would pay to Triple A the sum of $14,070.000.00 USD in fourteen monthly installments of $1,005,000.00 USD. (Exhibit H, 5/13/09, Note) and secured the signed receipt of a representative of Triple A. (Exhibit I, 5/21/09 Receipt).

23. Despite these negotiations and the resulting payment schedule, the DROC again failed to pay Triple A.

24. During June 2009, Mr. Sulaiman returned to the DROC to continue efforts to secure payment.

25. Thereafter Mr. Sulaiman, on behalf of Triple A and the Minister of Budget on behalf of the DROC executed an additional Memorandum of Understanding confirming the debt and agreeing to its payment (Exhibit J. Memorandum of Understanding).

26. On March 19, 2010, the Attorney General of the DROC instructed the Ministry of Finance to pay the debt to Triple A. (Exhibit K, 3/19/10 Correspondence).

27. On September 21, 2010, the Ministry of Finance instructed the Office of Public Finance to negotiate payment of the debt to Triple A. (Exhibit L, 9/21/10 Correspondence).

28. On October 11, 2010, the Ministry of Finance again requested that the Office of Public Finance address the debt payment issue. (Exhibit M, 10/11/10 Correspondence).

29. To date, despite multiple demands for payments, and repeated acknowledgments by the DROC of the legitimacy of the debt, Triple A has not received payment in accordance

with the 1994 agreement, its 2004 reaffirmation, and the two agreements in 2009 including the Memorandum of Understanding

## COUNT I

## BREACH OF CONTRACT

30. Triple A incorporates by reference the allegations contained in Paragraphs 1 to 29.

31. In 1994, Triple A entered into an agreement with the DROC for the former to supply certain light military equipment.

32. Triple A delivered the equipment as promised, and otherwise fully performed its obligations under the agreement.

33. Thereafter, the DROC failed to pay Triple A for the equipment.

34. The DROC's failure to pay constituted a material breach of the parties' agreement.

35. After years of negotiation, the DROC executed an acknowledgement of indebtedness in 2004 and entered into two agreements during 2009 with Triple A culminating in the Memorandum of Understanding that resolved the parties' dispute over payment.

36. As part of the Memorandum of Understanding, the DROC agreed to pay Triple A a sum of $14,070,000.00 USD in fourteen monthly installments of $1,005,000.00 USD.

37. The Memorandum of Understanding is a valid and enforceable agreement.

38. Triple A has performed all of its obligations under the Memorandum of Understanding.

39. Despite repeated acknowledgements of the legitimacy of the debt, the DROC has materially breached the Memorandum of Understanding by failing to pay Triple A.

40. Triple A has suffered significant damages because of the DROC's material breach.

## COUNT II

## ACCOUNT STATED

41. Triple A incorporates by reference the allegations contained in Paragraphs 1 to 40.

42. In 1994, Triple A entered into an agreement with the DROC for the former to supply certain light military equipment.

43. The DROC accepted the equipment, and failed to object to payment within a reasonable time.

44. In 2004, the DROC reaffirmed its indebtedness to Triple A.

45. In 2009, Triple A and the DROC entered into two agreements resulting in a Memorandum of Understanding 4 that resolved the parties' dispute over payment.

46. The Memorandum of Understanding evidenced the parties' assent to the sum due and certain of $14,070,000.00 USD. (Exhibit N, Sulaiman Affidavit).

47. The DROC failed to object to the sum contained in the Memorandum of Understanding.

48. Despite repeated requests from Triple A, the DROC has failed to pay according to the terms of the Memorandum of Understanding.

49. Despite repeated acknowledgements of the legitimacy of the debt, the DROC has failed to pay according to the terms of the Memorandum of Understanding.

## RELIEF REQUESTED

WHEREFORE, Triple A International, Inc. requests that this Court enter Judgment against The Democratic Republic of The Congo and in favor of Triple A International, Inc. for the sum of $14,070.000.00 USD, plus applicable interest and attorney fees.

Respectfully submitted,

Dated: November 30, 2010

**KERR, RUSSELL AND WEBER, PLC**

By: /s/ Robert E. Forrest
Robert E. Forrest (P32733)
Davidde A. Stella (P69948)
500 Woodward Avenue, Suite 2500
Detroit, Michigan 48226
(313) 961-0200
ref@krwlaw.com; das@krwlaw.com

**LAW OFFICES OF ALI H. DAGHER, PC**

By: /s/ Ali H. Dagher
Ali H. Dagher (P47354)
14207 Ford Road
Dearborn MI 48126
(313) 846-1900
adagher@dgdlegal.com
Attorneys for the Plaintiff